UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 16-cv-23051

PAULINA GUERRERO,

Plaintiff,

v.

MORAL HOME SERVICES, INC.
And ARMANDO MORALES ROSE,

Defendants.
_________________________________/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

Defendants, Moral Home Services, Inc., (hereinafter referred to as "Assisting Hands")[1] and Defendant, Armando Morales Rose[2], by and through their undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Local Rule 7.1 hereby serve and file their Motion for Summary Judgment and respectfully state as follows:

## I. PRELIMINARY STATEMENT

Plaintiff, Paulina Guerrero, a home health care aide, who was employed by Moral Home Services, Inc., d/b/a Assisting Hands (hereinafter "Assisting Hands")

---

[1] See Declaration of Armando Morales Rose, which is Exhibit C, to Defendants' Statement of Undisputed Material Facts, which was filed with the Court.
[2] Defendant Armando Morales Rose disputes that he is an "employer" within the meaning of the Fair Labor Standards Act and reserves the right to raise this issue should
[2] Defendant Armando Morales Rose disputes that he is an "employer" within the meaning of the Fair Labor Standards Act and reserves the right to raise this issue should
this Court deny Defendants' Motion for Summary Judgment. Mr. Morales has joined in the Motion for Summary Judgment as it pertains to the legal issues raised.

seeks to recover overtime wages even though she falls within the companionship exemption of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §213(a)(15)

Assisting Hands is a home health care agency that places home health care aides in private homes to provide the client with personalized non-medical care in the client's home. (Facts ¶ 2, 3)[3].

On July 14, 2016, Plaintiff filed her Complaint, which states that she seeks to recover $3,913.75 in overtime wages for the period covering January 26, 2015 through November 29, 2015. (Facts ¶ 12). Plaintiff's Statement of Claim filed with the Court on August 3, 2016 pursuant to the Court's Notice of Court Practice in FLSA Cases, set forth the total amount of alleged unpaid wages as $3,913.75 for the period covering January 26, 2015 through November 29, 2015. (Facts ¶ 13).

As more fully set forth below, Defendants respectfully request that this Court grant Defendants' Motion for Summary Judgment and grant it any other relief that this Court deems just and appropriate, including attorney's fees and costs associated with the defense of Plaintiff's FLSA claim.

## II. Memorandum of Law

### A. Summary Judgment Standard

Although the Court must consider all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts in favor of the non-moving party, the "non moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved." *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1080

[3] References to the Statement of Undisputed Material Facts filed in support of Defendants' Motion for Summary Judgment are made as "Facts" followed by the paragraph number. Defendants' Statement of Undisputed Material Facts has been filed simultaneously with Defendants' Motion for Summary Judgment and Memorandum of Law.

(11th Cir. 1990). To defeat summary judgment in this Circuit, the non-moving party must provide more than a mere scintilla of evidence. *Earl v. Mervyns, Inc.*, 207 F. 3d 1361, 1365 (11th Cir. 2000). The Eleventh Circuit "urge(s) district courts to take a firm hand and whittle down cases down to the few triable claims, casting aside the many non-triable ones…through summary judgment where there is no genuine issue of material facts." *Chapman v. AI Transp.*, 229 F. 3d 1012, 1027 (11th Cir. 2000).

"[A]n employee who brings suit under the FLSA for unpaid wages or unpaid overtime compensation has the burden of proving that [she] performed work for which [she] was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88, *superseded by statute on other grounds*, 29 U.S.C. §254(a). The FLSA recognizes certain categories of exempt employees who are not entitled to recover overtime compensation for hours worked in excess of forty hours. *Gregory v. First Title of Am., Inc.,* 555 F. 3d 1300, 1302 (11th Cir. 2009). The determination whether an employee's job qualifies as exempt from federal wage laws is a question of law to be resolved by the courts. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

"A defendant may prevail on a motion for summary judgment on an affirmative defense, such as an entitlement to an exemption under the FLSA, when it has produced credible evidence…that would entitle it to a directed verdict if not controverted at trial." *Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254, 1256-7 (M.D. Ala. 2013).

When applying these standards to this case, summary judgment is appropriate because Assisting Hands properly availed itself of the companionship exemption for the entire period of Plaintiff's employment.

### B. HISTORY OF THE FLSA COMPANIONSHIP EXEMPTION

The Fair Labor Standards Act (hereinafter "FLSA") requires covered employers, as defined in the Act, to pay minimum wage and overtime (one and one-half times the regular rate) for hours worked over forty (40) in a workweek. 29 U.S.C. §207. The FLSA provides employers an exemption from the minimum and overtime wage provisions set forth in Section 207 of the Act for certain categories of employees. 29 U.S.C. §213. Employees that "…provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves…" fall within the exemption of Section 207 of the FLSA. 29 U.S.C. §213(a)(15).

In 1975, the Department of Labor (hereinafter "DOL") issued implementing regulations, including the definition of "companionship services." *Home Care Ass'n of America v. Weil,* 76 F. Supp. 3d 138, 141 (D. D.C. December 22, 2015), *citing*, 40 FR 7404 (February 20, 1975). The Department of Labor regulations defined "companionship services" to mean "those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. *Id., citing* 40 FR 7405 (February 20, 1975). Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes and other similar services." *Id.* The 1975 regulations also specified that the exemptions

covered companions "employed by an employer or agency other than the family or household using their services. *Id.*, *citing*, 40 FR 7407 (February 20, 1975).

In 2007, the U.S. Supreme Court unanimously in an opinion delivered by Justice Breyer rejected a challenge to the application of the companionship services exemption to employees of third-party providers, such as home care staffing agencies. *Long Island care at Home, Ltd. v. Coke,* 551 U.S. 158 (2007).

In December 2011, the DOL published a Notice of Proposed Rulemaking to revise the companionship exemption, the FLSA regulation at issue here. *Home Care Assn'n of America,* 76 F. Supp. 3d at 142. The proposed rule excluded third party employers from the companionship exemption. *Id.*, *citing*, 76 Fed. Reg. 81, 190-98, 81,244. The Final Rule was published on October 1, 2013 and it prevented third party employers providing home-health care services from relying on the companionship exemption. *Id.*, citing 78 FR 60454 (Oct. 1, 2013); 28 Fed. Reg. 60557. Thus, the October 1, 2013 regulation issued by the DOL brought employees of third-party employers providing home-health care services within the scope of the minimum wage and overtime provisions of the FLSA. *Id.* The DOL established January 1, 2015 as the effective date of the October 1, 2013 regulation. *See Application of the Fair Labor Standards Act to Domestic Service*, 78 FR 60454 (October 1, 2013)(codified at 29 C.F.R. Part 552); 29 C.F.R. §552.109.

After the final rule was announced, the Home Care Association of America, the International Franchise Association, and the National Association for Home Care & Hospice challenged the new regulation under the Administrative Procedure Act in a complaint filed against David Weil, in his official capacity as Administrator of the

DOL's Wage and Hour Division and Thomas E. Perez, in his official capacity as the Secretary of the Department of Labor. *Home Care Assn'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C., December 22, 2014). The D.C. District Court in applying the analysis set forth in *Chevron USA, Inc. v. Nat. Res. Def Council*, 467 U.S. 837 (1984) concluded that the DOL exceeded its' rule making authority in eliminating the FLSA exemption for third party employers of home health care workers and **vacated** the Department of Labor's Third-Party Employer regulation. *Home Care Assn' of Am. v. Weil*, 76 F. Supp 3d 138, 148 (D.D.C. 2014) (emphasis added)("Accordingly, the United States Department of Labor's Third Party Employ[ment] regulations, promulgated in 28 Fed. Reg. 60,557 and to be codified at 29 C.F.R. §552.109 **is hereby VACATED"**). *Id. at* 148 (emphasis added).

In a separate opinion, the district court vacated the definition of companionship services finding that it contravened with the text of the statutory exemption and congressional intent. *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 127-130 (D. D.C. January 14, 2015)("Accordingly, the United States Department of Labor's regulation defining "companionship services," promulgated in 78 Fed. Reg. 60, 557 and to be codified at 29 C.F.R. §552.6, is hereby VACATED.")

The DOL appealed the D.C. district courts' decisions and on August 21, 2015, the DC Circuit Court of Appeals reversed the district court's orders and affirmed the validity of the October 2013 final rule. *Home Care Ass'n of Am. v. Weil,* 799 F 3d 1084, 1094, 1095 (DC. Cir. 2015). Notably, the DC Circuit expressly stated that "[i]n light of the district court's vacatur of the third-party employer regulation, appellees

[third party employers] could make use of the companionship-services exemption." *Weil*, 799 F. 3d 1084, 1090 (D.C. Cir. August 21, 2015).

On September 14, 2015, the DOL announced that it would not bring enforcement actions against any employer for violations of FLSA obligations resulting from the amended domestic service regulations for 30 days after the date the Court of Appeals issued a mandate making its opinion effective. 80 FR 55029 (September 14, 2015); (Facts ¶14).

The DC Circuit Court of Appeals decision reversing the district court's orders became effective on October 13, 2015, when the Court of Appeals issued its mandate. (Facts ¶14). The DOL began enforcement of the Final Rule on November 12, 2015, that is 30 days from October 13, 2015, the date the DC Circuit's decision became effective. 80 FR 65646 (October 27, 2015); (Facts ¶14).

The home health care trade associations filed a petition for certiorari with the U.S. Supreme Court to review the DC Circuit Court of Appeals decision and the Supreme Court denied the request on June 27, 2016. *Home Care Ass'n of Am. v. Weil*, 2016 U.S. Dist. Lexis 4067 (U.S. June 27, 2016).

## III. DEFENDANTS PROPERLY AVAILED THEMSELVES OF THE COMPANIONSHIP EXEMPTION

From July 14, 2013 until October 13 2015[4], Defendants properly availed themselves of the companionship exemption as it pertains to Plaintiff Paulina Guerrero. Federal law exempts from the overtime provisions "employee[s] employed in domestic service employment to provide companionship services for

[4] Plaintiff filed her claim for unpaid overtime compensation on July 14, 2016. The statute of limitations for a claim for unpaid wages is generally two years, but extends to three years if there is a finding that the employer willfully violated the statute. 29 U.S.C. §255.

individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by the regulations of the Secretary of Labor." 29 U.S.C. §213(a)(1).

The Department of Labor defined "companionship services" in 29 C.F.R. §552.6 (before October 1, 2013) as:

> [T]hose services which provide fellowship, care and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services…"

Plaintiff Guerrero testified and described her duties as a home health care aide while she was employed at Assisting Hands for different clients as follows:

- "I was a certified Nursing Assistant and my duties were to make breakfast, lunch, for patient, make sure they took their medicine, help them use the bathroom and well groomed, also to entertain patients including but not limited to games, walking, gardening, if the patient was able." (Facts ¶ 6).
- "I aided Ms. Utvich with going to the bathroom. I helped her get dressed. I helped her with her personal care, taking care of her teeth, her hair, her nails, her skin. I helped her with her medication, with her meals. When she was still able to, we did some gardening. She enjoyed classifying stuff, organizing stuff, so we had her – we called them her toys, because she used to organize them. She used to enjoy playing with chips and cards. (Guerrero Dep. 71; 13-24). (Facts ¶8).
- "…heat food in the microwave. And following the instructions, of course, of the doctor, I would also giver her some baby food which came in a little bag. And,

yeah, during the decline of her physical condition we had to mouth feed her everything with either a glass or a spoon." (Guerrero Dep. 72:7-13) (Facts ¶8).

- "Well, yeah, as her condition –I was in charge of her hygiene, and as her condition worsened, I couldn't handle her by myself. One person couldn't handle her, because, like I told you before, she was a bit unstable physically, so you know, putting her in the wheelchair and everything, and, yeah, I was in charge of basically taking care of her cleaning and that's it." (Guerrero Dep. 72:16-24) (Facts ¶8).
- Other employees from Assisting Hands as well as a service called Hospice Service assisted Plaintiff Guerrero in bathing Mrs. Utvich. (Guerrero Dep. 72:25; 73:1-6)
- "I would like to add that I did her laundry. I washed her sheets and her clothes. She would be bathed every day and we will change her sheets every day. We kept a clean environment around her. We kept everything around her in optimal clean conditions." (Guerrero Dep. 75:1-6) "Everything that was associated with her, because they already had someone who handled the cleaning of the house."(Guerrero Dep. 75:12-14). (Facts ¶8).
- "When I started with Mr. Edelman he was independent at first. So, basically, I assisted him with his baths. I bought his groceries at the market. I took him and picked him up from his medical appointments." (Guerrero Dep. 73:11-15) (Facts ¶ 9).
- I had to make sure that everywhere he would walk inside would be free of any risk for him to, you know, avoid him falling or tripping. I helped him with his

meds. I helped him get dressed. Like I said before, he was independent at first. I helped him with his routing. I helped him with his walks after meals and I would supervise his naps." (Guerrero Dep. 73:16-23) (Facts ¶9).

- Well, Mr. Edelman, his family, they would design menus and they would leave them at his house and I would heat them up on the microwave. And I would prepare his drinks and put them in the refrigerator, like, you know, like water and his juices for him just to open the refrigerator, pick it up and drink it." (Guerrero Dep. 74:1-9) (Facts ¶9).
- "I helped her with her routine. I would heat up her meals. She was an independent person. She bathed herself. We picked out her clothes together…I would drive her to the store." (Guerrero Dep. 75:19-22; 76:7) (Facts ¶9).
- She was independent, so we had a walking routine. We would be 30 minutes in the morning, 30 minutes in the afternoon…We used to dance. We used to sing. I also helped her to the medical appointments. She was super independent. And so regarding everything, regarding medical, clothing and bathing. They also had a person who helped with the cooking and the cleaning. I was in charge of keeping everything that was related to her clean. But that's it." (Guerrero Dep. 76:8-8-10, 14-22) (Facts ¶10).
- I helped her with her bathing. I helped her with her medication. I helped her get dressed. (Guerrero Dep 82:6-8) (Facts ¶10).
- I assisted her with her baths, with her medication, with her walks. She was an independent patient. I helped her out with her gardening and I kept her company while she watched TV." (Guerrero Dep. 82:13-17) (Facts ¶ 10).

The work performed by Plaintiff, as described by her own testimony, fell within the definition of companionship services. The companionship exemption, as discussed in Section B of this Motion, extended to third party employers, such as Assisting Hands. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007).

On October 13, 2015, Assisting Hands began to compensate its' home health care aides with overtime pay for any hours worked over forty in a given workweek. (Facts ¶15). Assisting Hands contends that this is the effective date of the new regulation issued by the Department of Labor. (Facts ¶15, 16). Therefore, there is no issue concerning unpaid overtime wages for the period beginning October 13, 2015, when Assisting Hands began paying overtime wages to its' home health care aides until Plaintiff resigned from employment on April 18, 2016.

The issue in this case turns on the question as to whether the Department of Labor's October 1, 2013 Rule became effective on November 12, 2015, the date that the D.C. Circuit's mandate to overturn the district court's decision took effect or as of January 1, 2015, the date set forth by the DOL in its final rule. Defendants recognize that this is an issue of first impression for the Southern District of Florida.

A district court in Ohio dismissed Plaintiffs' FLSA claim, which sought recovery for overtime wages for the period from January 1, 2015 through late August 2015. *Bangoy v. Total Homecare Solutions, LLC*, 2015 U.S. Dist Lexis 177859 (S.D. Ohio Dec. 21, 2015). The District Court in Ohio reached its' conclusion based, in part, upon the following rationale:

> The district court in the *Weil* cases vacated the rule that purportedly required [Defendant] to pay Plaintiffs overtime wages before it could go into effect. In the Court's view, [Defendant] was entitled to rely on that decision in not paying Plaintiffs overtime for the interim period

> now at issue in this case. Any other conclusion would put [Defendant], and other similarly situated employers, in an untenable position.

*Id.* at *5.

The district court in Ohio was persuaded by the principle of law that permitting plaintiffs to recover for a violation of the rule while the vacatur was in effect would give the rule an impermissible retroactive effect. *Id.* at 7, *citing*, *Fernandez-Vargas v. Gonzales*, 584 U.S. 30, 37 (U.S. 2000).

Senior District Court Judge Sandra Beckwith in the *Bangoy* case was also persuaded that the DOL rule was not intended to be given retroactive effect to January 1, 2015 by the DOL based upon the DOL's statements that it would not bring enforcement actions for violations that occurred before the Court of Appeals reinstated the rule. *Id*. at *8; (Facts ¶14). Judge Beckwith was of the opinion that the DOL's position "…strongly suggest[ed] that the rule should not be given retroactive effect in cases between private parties." *Id. at *9.* In support of this opinion, Judge Beckwith quoted the U.S. Supreme Court, which stated "[g]ood administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons." *Skidmore v. Swift & Co*, 323 U.S. 134, 139-40 (1944). There are no good reasons to require an employer to retroactively apply a DOL rule when the rule had been vacated by a federal district court and the DOL was not enforcing its' own rule as of the January 1, 2015 date. In fact, the district court in Ohio called Plaintiff's theory for retroactive application to

January 1, 2015 as a "heads I win, tails you lose" theory of the case, which is disfavored by the courts. *Id.* at *7.

Defendants maintain that the DOL's guidance following the *Weil* decisions (Facts ¶14), the U.S. Supreme Court's position on precluding the retroactive effect of statutes and the decision issued by the Ohio district court should persuade this Court to enter an Order granting Defendants' Motion for Summary Judgment and concluding that the DOL Rule became effective on November 12, 2015.

## IV. DEFENDANTS ACTED IN GOOD FAITH WHEN IT BEGAN COMPENSATING ITS' HOME HEALTH CARE AIDES WITH OVERTIME ON OCTOBER 13, 2015 AND THUS, IF ANY OVERTIME COMPENSATION IS OWED, THIS COURT SHOULD DENY PLAINTIFF AN AWARD OF LIQUIDATED DAMAGES.

The determination of good faith for purposes of establishing liquidated damages is a question of law for the court. 29 U.S.C. §. 260; *Dybach v. Fla. Dep't of Corr.*, 942 F. 2d 1562, 166-67 (11th Cir. 1991); *Joiner v. City of Macon*, 814 F. 2d 1537, 1539 (11th Cir. 1987).

The safe harbor provision of the FLSA specifically provides as follows:

> In any action …to recover…unpaid overtime compensation or liquidated damages, under the [FLSA]….,if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation…the court may, in its sound discretion, aware no liquidated damages…

29 U.S.C. §260.

In the case before this Court, Defendants relied on the guidance received from various industry resources to begin compensating its' home health care aides with overtime pay effective October 13, 2015. (Facts ¶14). Defendants kept themselves informed from various industry sources on the subject. (Facts ¶ 16) and

it had reasonable grounds for believing the decision to begin payment of overtime compensation on October 13, 2015 comported with the FLSA. (Facts ¶14, 15 and 16).

Defendants have demonstrated that they had both a subjective belief that they were in compliance with the FLSA and that they had an objectively reasonable basis for this belief and as such, the court apply the safe harbor provision and deny an award of liquidated damages pursuant to the FLSA's safe harbor provision.

## V. CONCLUSION

Based upon the foregoing, Defendants respectfully request that this Court grant their Motion for Summary Judgment and award it any other relief that this Court deems just and appropriate, including attorney's fees and costs in the defense of this case and in preparation of said Motion.

DATE: December 5, 2016

Respectfully submitted,

__________/s/__________________

Ena T. Diaz
Fla. Bar No. 0090999
ENA T. DIAZ, P.A.
*Attorney for the Defendants*
999 Ponce De Leon Blvd. – Ste 720
Coral Gables, FL 33134
Tel.: (305) 377-8828
Fax: (305) 356-1311
ediaz@enadiazlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed Defendants' Motion for Summary Judgment and Memorandum of Law in Support (Case No. 16-cv-23051) with the Clerk of Court by using the CM/ECF system which will in turn send a notice of electronic filing to: Yelina Angulo, Esquire, (service@angulolawfirm.com), Angulo Law Firm, P.A., 5207 NW 74 Avenue, Miami, FL 33166 on this 5th day of December 2016.

__________/s/______________________

ENA T. DIAZ